# United States Court of Appeals for the Fifth Circuit

IN RE AD HOC GROUP OF HOLDERS OF PERSONAL INJURY AND
WRONGFUL DEATH CLAIMS,

*Petitioners.*

Petition for Writ of Mandamus to the United States Bankruptcy Court
for the North District of Texas, Chapter 11 No. 25-80185

**PETITION FOR WRIT OF MANDAMUS OF AD HOC GROUP OF
HOLDERS OF PERSONAL INJURY AND WRONGFUL DEATH CLAIMS**

**BROWN RUDNICK LLP**
David J. Molton
Eric R. Goodman
Gerard T. Cicero
Seven Times Square
New York, New York  10036
Telephone:  (212) 209-4800
Facsimile:   (212) 209-4801
Email: dmolton@brownrudnik.com
       egoodman@brownrudnik.com
       gcicero@brownrudnik.com

**STUTZMAN, BROMBERG,
ESSERMAN & PLIFKA, PC**
Sander L. Esserman
Peter C. D'Apice
2323 Bryan Street, Ste. 2200
Dallas, Texas  75201-2689
Telephone:  (214) 969-4900
Facsimile:   (214) 969-4999
Email: esserman@sbep-law.com
       dapice@sbep-law.com

**MARKS, BALETTE, YOUNG &
MOSS PLLC**
Jacques G. Balette
7521 Westview Dr.
Houston, Texas  77055
Telephone:  (713) 681-4830
Facsimile:   (713) 681-2811
Email: jacquesb@marksfirm.com

*Counsel for Ad Hoc Group of Personal Injury and Wrongful Death Claims*

November 17, 2025

# TABLE OF CONTENTS

**Page**

INTRODUCTION ............................................................................................1

RELIEF SOUGHT ..........................................................................................5

ISSUES PRESENTED .....................................................................................5

STATEMENT OF FACTS ...............................................................................5

I.    Debtors' Bankruptcy Cases ..................................................................5

    A.    Private Equity's Acquisition of Genesis ...............................5

    B.    The Bankruptcy Filing .........................................................6

    C.    The Non-Debtor Co-Defendants ..........................................7

II.    Orders Enjoining Actions Against Non-Debtor Parties ..................8

    A.    First Order ............................................................................9

    B.    Second Order ........................................................................9

    C.    Third Order .........................................................................10

REASONS THE WRIT SHOULD ISSUE .....................................................13

I.    Petitioners Have a Clear Right of Access to the Justice System...................14

    A.    A Bankruptcy Court Does Not Have Authority to Discharge Claims Against Non-Debtors............................................................16

    B.    Section 362(a) Does Not Enjoin Actions Against Non-Debtors ........18

    C.    Section 105(a) Does Not Authorize a Bankruptcy Court to Enjoin Actions Against Non-Debtor Parties................................................20

    D.    A Bankruptcy Court Cannot Function as a "Gatekeeper" ...............21

    E.    Preliminary Injunction Requirements Were Not Satisfied ...............23

II.   The Claimants Have No Other Adequate Means to Attain Relief from the
      Stay Orders ...................................................................................................29

III.  Issues Have Importance Beyond the Immediate Case ...................................30

CONCLUSION ........................................................................................................34

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*A.H. Robins Co. v. Piccinin,*
    788 F.3d 994 (4th Cir. 1986) .................................................................23, 27, 28

*Arnold v. Garlock, Inc.,*
    278 F.3d 426 (5th Cir. 2001) .............................................................................19

*Bartenwerfer v. Buckley,*
    598 U.S. 69 (2023).............................................................................................23

*Beran v. World Telemetry, Inc.,*
    747 F. Supp. 2d 719 (S.D. Tex. 2010) ..............................................................24

*Bestwall LLC v. Official Committee of Asbestos Claimants of
    Bestwall, LLC,*
    148 F.4th 233 (4th Cir. 2025) .......................................................................31, 32

*Black Fire Fighters Ass'n of Dallas v. City of Dallas, Texas,*
    905 F.2d 63 (5th Cir. 1990) ..............................................................................28

*In re Bora Bora, Inc.,*
    424 B.R. 17 (Bankr. D. Puerto Rico 2010)........................................................23

*In re Boy Scouts of America,*
    137 F.4th 126 (3d Cir. 2025) .............................................................................29

*C.H. Robinson Co. v. Paris & Sons, Inc.,*
    180 F. Supp. 2d 1002 (N.D. Iowa 2011) ...........................................................23

*Chamber v. Baltimore & O.R. Co.,*
    207 U.S. 142 (1907)...........................................................................................15

*Cheney v. U.S. Dist. Ct. for D.C.,*
    542 U.S. 367 (2004).....................................................................................13, 14

*City of Chicago v. Fulton,*
    592 U.S. 154 (2021)...........................................................................................23

iii

*In re Clarke*,
  94 F.4th 502 (5th Cir. 2024) ...............................................14

*Matter of Commonwealth Oil Ref. Co.*,
  805 F.2d 1175 (5th Cir. 1986) ...........................................27

*Crandall v. Nevada*,
  73 U.S. 35 (1867) ................................................................15

*Czyzewski v. Jevic Holding Corp.*,
  580 U.S. 451 (2017) ...........................................................23

*Dawson v. U.S.*,
  68 F.3d 886 (5th Cir. 1995) .........................................17, 18

*Defense Distributed v. Bruck*,
  30 F.4th 414 (5th Cir. 2022) ..............................................14

*In re Divine Ripe, LLC*,
  538 B.R. 300 (Bankr. S.D. Tex. 2015) ..............................24

*Edge Petroleum Operating Co. v. GPR Holdings, L.L.C. (In re TXNB
  Internal Case)*,
  483 F.3d 292 (5th Cir. 2007) .......................................19, 20

*In re Excel Innovations, Inc.*,
  502 F.3d 1086 (9th Cir. 2007) ...........................................23

*Feld v. Zale Corp.*,
  62 F.3d 746 (5th Cir. 1995) ...................................9, 20, 24

*In re Fernstrom Storage & Van Co.*,
  938 F.2d 731 (7th Cir. 1991) .............................................24

*GATX Aircraft Corp. v. M/V Courtney Leigh*,
  768 F.2d 711 (5th Cir. 1985) .............................................19

*Granfinanciera, S.A. v. Nordberg*,
  492 U.S. 33 (1989)..............................................................15

*Hanover Nat'l Bank v. Moyses*,
  186 U.S. 181 (1902).............................................................14

*Harrington v. Purdue Pharma L.P.*,
603 U.S. 204 (2024)....................................................... 3, 6, 7, 10, 16, 17, 18, 21

*Matter of Highland Capital Management, L.P.*,
132 F.4th 353 (5th Cir. 2025) ............................................. 2, 3, 4, 18, 21, 22, 32

*Jackson v. Corizon Health Inc.*,
No. 2:19-cv-13382, 2022 WL 16575691 (E.D. Mich. Nov. 1, 2022) ...............31

*Kelly v. Corizon Health Inc.*,
No. 2:22-cv-10589, 2022 WL 16575763 (E.D. Mich. Nov. 1, 2022) ...............31

*In re Kirkland*,
75 F.4th 1030 (9th Cir. 2023) .............................................................13

*Logan v. Zimmerman Brush Co.*,
455 U.S. 422 (1982).........................................................................15

*Mallinckrodt plc*,
No. 20-408, 2021 WL 523625 (D. Del. Feb. 11, 2021). ....................................30

*McConnell v. Federal Election Comm'n*,
540 U.S. 93 (2003)...........................................................................16

*In re Murray Boiler LLC*,
No. 20-30609 (Bankr. W.D.N.C.) ......................................................31

*Ortiz v. Fibreboard Corp.*,
527 U.S. 815 (1999).........................................................................15

*In re Ozcelebi*,
639 B.R. 365 (Bankr. S.D. Tex. 2022) ......................................................26, 27

*In re Pac. Lumber Co.*,
584 F.3d 229 (5th Cir. 2009) .............................................................17

*In re Parlement Techs., Inc.*,
661 B.R. 722 (Bankr. D. Del. 2024)....................................................25

*Phillips Petroleum Co. v. Shutts*,
472 U.S. 797 (1985)..........................................................................15

*Reliant Energy Services, Inc. v. Enron Canada Corp.*,
  349 F.3d 816 (5th Cir. 2003) ...................................................9, 20, 24

*Ex parte Republic of Peru*,
  318 U.S. 578 (1943)...............................................................................14

*Slaughter-House Cases*,
  83 U.S. 36 (1873) ...................................................................................15

*Stern v. Marshall*,
  564 U.S. 462 (2011)..........................................................................13, 16

*Wedgeworth v. Fibreboard Corp.*,
  706 F.2d 541 (5th Cir. 1983) ...............................................3, 9, 19, 33

**Statutes**

11 U.S.C. § 108(c) ..................................................................................12, 20

11 U.S.C. § 362........................................................................................9, 20

11 U.S.C. § 362(a)(1)..........................................................9, 19, 20, 27, 28

11 U.S.C. § 362(a)(2)-(5)..............................................................................19

11 U.S.C. § 362(a)(3).............................................................................27, 28

11 U.S.C. § 502(e) ........................................................................................25

11 U.S.C. § 509(c) ........................................................................................25

11 U.S.C. § 524(e) ..................................................................................20, 21

11 U.S.C. § 922(a) ........................................................................................19

28 U.S.C. § 157(b)(2)(B) ........................................................................16, 18

28 U.S.C. § 1334(c) ......................................................................................13

28 U.S.C. § 1411 ..........................................................................................15

28 U.S.C. § 1411(a) ................................................................................16, 18

28 U.S.C. § 1651(a) ......................................................................................13

# INTRODUCTION

Granting this Petition is necessary to prevent tort victims from being trapped in bankruptcy indefinitely where they are currently barred from accessing the civil justice system and where they will be unfairly coerced and penalized if they do not agree to release non-debtor tortfeasors that caused them serious injury. The normal appellate process is inadequate to remedy this abuse.

Petitioners—holders of personal injury and wrongful death claims—are entitled to access the justice system so that they can seek recovery on account of their injuries from non-debtor tortfeasors. Here, the Bankruptcy Court for the Northern District of Texas (the "**Bankruptcy Court**" or the "**Court**"), issued a series of orders—referred to herein as the "**Stay Orders**"—that deprive Petitioners of their fundamental rights. App. 479, 503, 649.[1]

The Stay Orders rely on an interpretation of the Bankruptcy Code (the "**Code**") that is inconsistent with Fifth Circuit precedent. The Stay Orders bar Petitioners from asserting claims against non-debtor tortfeasors even though the Fifth Circuit has held that section 362(a)'s automatic stay does not apply to such claims. App. 481 at ¶ 2, 505 at ¶ 2.

While they are so barred, Petitioners are forced into a mandatory claims allowance process. Under this process—or the "**PI/WD Procedures**"—Debtors

---

[1] "App." refers to Petitioners' Appendix.

propose a claim value.  App. 662-667.  But to accept the Debtors' claim value, Petitioners must agree to release non-debtor tortfeasors.  App. 652 at ¶ 8.  If Petitioners refuse to release non-debtor tortfeasors, they must pay up to $7,500 per claimant and participate in mandatory mediation.  App. 670 at ¶ 37.

Petitioners cannot seek discovery without authorization from Debtors' unilaterally selected mediator.  App. 668-669 at ¶ 34.  There is no time limit on how long this process can take.  Petitioners have no practical ability to "opt out."  While this process takes place, the statute of limitations for asserting claims against non-debtors may expire, which would completely deprive Petitioners of their rights.

If Petitioners fail to comply with the Court's procedures, Petitioners can be sanctioned, their personal injury claims liquidated for $0, and their jury trial rights deemed forfeited.  App. 675 at ¶ 50.  Petitioners can escape this process if they grant non-debtor tortfeasors a release.  App. 662 at ¶ 19.

Contrary to the holding in *Matter of Highland Capital Management, L.P.*, 132 F.4th 353 (5th Cir. 2025), the Bankruptcy Court has once again made itself the gatekeeper of claimants' ability to seek a recovery from non-debtor tortfeasors that are not entitled to a discharge.  Absent intervention, Petitioners will be trapped in bankruptcy indefinitely and deprived of their fundamental rights.

The right to appear in court and seek compensation for an injury is a fundamental right. It is one of the most essential privileges of citizenship. But no right has meaning if it cannot be exercised and judicially enforced.

The United States has a historic tradition that everyone is entitled to their day in court. The right to seek compensation for an injury is protected by the Fifth Amendment and carries with it the right to a jury trial. Congress has made it clear that core proceedings in bankruptcy exclude the liquidation of personal injury claims, and that the Code cannot interfere with an individual's right to a jury trial.

The ruling in *Harrington v. Purdue Pharma L.P.*, 603 U.S. 204 (2024), also made it clear that for an Article I court to assert authority to reshape this "traditional practice so profoundly" by providing the benefits of bankruptcy to non-debtor tortfeasors, it must be able to point to a Code provision that "expressly" provides such authority. *Id.* at 224. No such provision exists.

Contrary to the Stay Orders, the Code contains no provision authorizing a bankruptcy court to deprive Petitioners access to the civil justice system to seek redress from non-debtors that are liable for their own, negligent conduct.

Fifth Circuit precedent is clear that section 362(a) does not operate as a stay of claims against co-defendants. *Wedgeworth v. Fibreboard Corp.*, 706 F.2d 541, 544 (5th Cir. 1983). And the Fifth Circuit reiterated in *Highland Capital* that a

bankruptcy court "exceed[s] its powers under § 105" if it approves an injunction protecting non-debtors that are ineligible for a discharge. 132 F.4th at 359.

Strategies that use section 362(a)'s stay and section 105(a) injunctions to protect non-debtors that are not entitled to a discharge are now common ploys. Left unchecked, bankruptcy inflicts lethal delay, as victims die due to their injuries while they are denied access to the civil justice system by Article I courts. The Stay Orders represent an endorsement of these strategies contrary to Fifth Circuit precent.

The Fifth Circuit can stop this abuse and provide a marker for future courts to follow. Impermissible stay extensions often evade appellate review when treated as interlocutory orders. Debtors have also evaded review by engaging in transactions designed to moot appeals involving non-debtor releases.

Debtors' assumption is that Petitioners, unable to obtain timely relief through the appellate process, will capitulate to Debtors' demands that they release non-debtor tortfeasors that caused them injury. A writ of mandamus is necessary.

Petitioners have a clear right to seek compensation from non-debtor tortfeasors. The Stay Orders force punitive costs on victims, while barring and gatekeeping relief against non-debtors. Petitioners have no adequate means to attain the relief they seek absent issuance of a writ. The issues here are repeatable and have importance well beyond the immediate case.

## RELIEF SOUGHT

For this Court to order that the Stay Orders be vacated.

## ISSUES PRESENTED

1.     Whether the Court had the authority to indefinitely deprive holders of personal injury claims of access to the civil justice system to seek recovery from non-debtors that are liable based on their own tortious conduct.

2.     Whether the Court had the authority to order procedures to liquidate personal injury and wrongful death claims that coerce claimants into granting non-debtors releases.

## STATEMENT OF FACTS

### I.     DEBTORS' BANKRUPTCY CASES

### A.     Private Equity's Acquisition of Genesis

Genesis Healthcare, Inc. and its affiliated debtors, referred to herein as "**Genesis**" or the "**Debtors**," operate nursing homes across the country.  App. 1.

In 2007, private equity firms bought Genesis.  App. 9.  In a classic move in the private equity playbook, these firms monetized Genesis's real estate assets through a sale to a health care REIT for $2.4 billion.  App. 10.

Then, the new owners saddled Genesis with costly leases on real estate Genesis once owned and leveraged debt to secure a payout for private equity sponsors and other investors.  Next, Genesis went on a buying spree.  App. 10-11.  By 2016, Genesis became one of the largest nursing home operators in the country.

App. 1-2. Starting in March 2021, when Genesis was navigating the Covid-19 pandemic, Genesis began accepting investments from a new private equity firm. App. 12-13. A Senate investigation revealed that Genesis was in financial distress despite receiving $665 million in governmental assistance. Patient care declined and many Petitioners died due to Genesis' and its human leaders' decision to prioritize profits and payouts over their obligation to provide care to nursing home residents.

### B. The Bankruptcy Filing

Genesis filed for bankruptcy in July 2025. This bankruptcy is designed to lock in private equity's ill-gotten gains and harm tort victims.

Debtors' strategy, known colloquially as the "*Purdue* End Around," involves an insider sale transaction where Debtors' operating assets are sold to an insider on a "free and clear" basis, and the tort victims' claims against non-debtors are treated as "estate claims" that Debtors can release without the affected claimants' consent.[2] Direct claims against non-debtor parties based on those parties' own conduct are trapped in bankruptcy by orders designed to insulate non-debtors indefinitely.

---

[2] The *Purdue* Court held that a debtor cannot treat a tort victim's claims against non-debtors as estate property that a debtor can bargain away without the tort victim's consent. 603 U.S. at 220. The Bankruptcy Court held that the opposite is true. *See* App. 481 at ¶ 3.

Aspects of Debtors' strategy are the subject of a pending appeal, which matter is separate from this Petition.[3] If Debtors' strategy succeeds, an insider sale transaction will leave Debtors with no operating assets and insufficient funds to make a meaningful, if any, distribution to victims. Petitioners' best hope for a recovery is to continue litigation against non-debtors.

## C. The Non-Debtor Co-Defendants

Petitioners contend that several non-debtors are liable to Petitioners based on their independent conduct. App. 254-287. A company called "Career Staffing," which placed staff at Genesis's facilities, had an independent duty to ensure that its personnel were qualified, supervised, and retained only if fit to render care in compliance with state law. App. 256.

Upon information and belief, Debtors' insiders have an interest in Career Staffing and utilized Career Staffing to withdraw substantial funds from Debtors. Career Staffing employed doctors, administrators, and nurses—many of whom are potential defendants. These individuals are liable for violations of their independent

---

[3] *See Estate of Alma Brown, et al. v. 1 Glen Hill Road Operations LLC, et al.*, No. 25-cv-02855-E (N.D. Tex.). This appeal challenges the Court's ruling made on October 8th that Petitioners' state law rights are Debtors' property that Debtors can sell without Petitioners' consent. App. 481 at ¶ 3. Petitioners assert that this ruling contradicts *Purdue* and interprets the Code in a manner that violates the Fifth and Seventh Amendments.

and non-delegable duties owed to Petitioners by virtue of their professional licenses and regulations governing their conduct.  App. 256-257.

If Petitioners can bring their claims forward, non-debtor doctors and nurses could look to Career Staffing for reimbursement.  Petitioners' best hope for a recovery is to seek compensation from non-debtors.

Post-sale, Debtors will have little available to distribute to creditors.  The purchaser is buying assets on a "free and clear" basis.  The purchaser may find it inconvenient if doctors and nurses become litigation targets.  But such lawsuits would have no impact on Debtors' estates.

Claims for indemnification, contribution, or reimbursement are general unsecured claims that, like Petitioners' claims against Debtors, are stayed and likely worthless.  One solution would be for the purchaser to agree to indemnify Career Staffing and others, but then Petitioners would have a clear path to a recovery.

## II.   ORDERS ENJOINING ACTIONS AGAINST NON-DEBTOR PARTIES

Debtors' solution is to shield non-debtors from liability to lock in private equity's ill-gotten gains.  The Court, through a series of orders, obliged this request and ruled that the automatic stay enjoins Petitioners from having access to the justice system to seek compensation from non-debtor tortfeasors.  App. 479, 503, 649.

### A.     First Order

The "**First Order**," entered on October 8, 2025,[4] contradicts the holding in *Wedgeworth*.  **Compare**, 706 F.2d at 544 ("§ 362 does not operate as an automatic stay of claims against the co-defendants"); **with** App. 481 at ¶ 2 ("Pursuant to section 362(a)(1) … Claimants' direct claims … against any non-Debtor party that is a co-defendant of a Debtor are stayed.").

The Court held, contrary to *Wedgeworth*, that "section 362(a)(1) … applies to direct claims … that have been asserted by Claimants in litigation involving a Debtor or could be asserted by Claimants in litigation involving a Debtor."  App. 481 at ¶ 2.

The Court held that non-debtor tortfeasors are protected by section 362(a)(1), subject to the claimants' right to seek "relief from the automatic stay to file, commence, continue, or prosecute direct claims … against any non-Debtor party that is or could be added as a co-defendant of a Debtor."  *Id.*

### B.     Second Order

The "**Second Order**" entered on October 14, 2025 contradicts the ruling in *Feld v. Zale Corp.*, 62 F.3d 746 (5th Cir. 1995)—by extending the stay to non-debtors absent an adversary proceeding—and the ruling in *Reliant Energy Services, Inc. v. Enron Canada Corp.*, 349 F.3d 816 (5th Cir. 2003)—by extending the stay

---

[4]   References herein to the "First Order" are to Paragraph 2 of the First Order only.

absent unusual circumstances and without regard to the standard for obtaining a preliminary injunction.  App. 505 at ¶ 2.

Under the Second Order, the Court "extended" the "automatic stay" to "prohibit" the "continuation" or "commencement" of "lawsuits" against "Non-Debtor Defendants."  *Id.*  Career Staffing is among the "Non-Debtor Defendants" identified on Schedule 1 to the Second Order, which purports to identify co-defendants named in pending litigation.  App. 508-568.

The Court further "extended" the "automatic stay" to "prohibit the severing of claims in Lawsuits by the applicable Non-Bankruptcy Court that would allow claims against the Non-Debtor Defendants to proceed."  *Id.* at ¶ 4.  Thus, the Court enjoined state and federal courts from severing claims to permit litigation against non-debtors to proceed.

### C.    Third Order

The "**Third Order**" entered on November 6, 2025, together with the First Order and the Second Order, the "**Stay Orders**," contradict the ruling in *Purdue* and Fifth Circuit precedent forbidding nonconsensual third-party releases.  *See* App. 649. In the Third Order, the Court approved a process for liquidating personal injury and wrongful death claims—*i.e.*, the "**PI/WD Procedures**."  App. 650 at ¶ 2.  The Third Order, and the PI/WD Procedures attached thereto as "Exhibit 1," do several things.

**First**, all personal injury claimants are "subject to" the PI/WD Procedures. App. 650 at ¶ 3. The PI/WD Procedures remain in place until Petitioners agree to a "resolution" of their claims acceptable to Debtors or Debtors "terminate" the PI/WD Procedures as to Petitioners' claims. App. 659 at ¶ 10, App. 673 at ¶ 44.

**Second**, "[h]olders of Unliquidated Claims are enjoined from taking any actions to liquidate their Unliquidated Claims, including, without limitation, by lifting the automatic stay, other than through the [PI/WD] Procedures." App. 651 at ¶ 4. The PI/WD Procedures create "a presumption" that "claims against non-Debtor co-defendants" are subject to the PI/WD Procedures "to the extent they arise from or are related to the Debtors' operations." App. 657-658 at ¶ 6.

**Third**, while Petitioners are effectively trapped in bankruptcy, the PI/WD Procedures force Petitioners to engage in an "Offer Exchange" process to liquidate their claims. App. 658-667 at ¶¶ 9-32. As part of this process, Debtors can demand "information and supporting documentation" from Petitioners. App. 661 at ¶ 15. But Petitioners cannot seek "any discovery related to" their personal injury claims unless authorized by Debtors' chosen mediator. App. 668-669 at ¶¶ 34-35.

**Fourth**, Petitioners are required to release non-debtors, including Career Staffing, as a condition to settlement. App. 652 at ¶ 8. Even if Petitioners and Debtors agree on the value of Petitioners' claims against Debtors, no resolution of

such claim is possible under the PI/WD Procedures unless Petitioners also grant non-debtor tortfeasors a release. *Id.*

**Fifth**, if Petitioners refuse to accept Debtors' valuation of their claims or refuse to provide non-debtor tortfeasors with a release, they must pay up to $7,500 for mandatory mediation with a mediator selected by Debtors. App. 669-671 at ¶¶ 35-39. It is likely that this fee will exceed Petitioners' recovery from Debtors' estates on account of their claims against Debtors.

**Sixth**, Petitioners are subject to sanctions. App. 675 at ¶ 50. If they fail to comply with the PI/WD Procedures, "negotiate in good faith" or "cooperate," then the Court may impose sanctions by "disallow[ing] and expunge[ing]" Petitioners' claims and by "awarding attorneys' fees, other fees and costs." *Id.*

**Seventh**, Petitioners cannot "opt out" of or "terminate" the PI/WD Procedures unless they agree "to waive any right to recovery against Debtors' estates and any party who may seek reimbursement from the Debtors' estates." App. 662 at ¶ 19. Only Debtors can unilaterally terminate the PI/WD Procedures. App. 673 at ¶ 44.

**Eighth**, the PI/WD Procedures purport to "toll[]" the period for a non-debtor to commence an action against a non-debtor. App. 658 at ¶ 9. But defendants can, and likely will, argue that section 108(c) does not authorize such relief. Notably, this provision was added at the last minute and was not reflected in Debtors' motion as noticed for hearing. App. 411-480.

**Ninth**, should Debtors, in their sole discretion, agree to terminate the PI/WD Procedures as to Petitioners' claims, then the Court will determine whether it has jurisdiction to resolve such claims and whether such claims are subject to the abstention provisions of 28 U.S.C. § 1334(c).  App. 673-674 at ¶¶ 44-46.

But, if the Court lacks jurisdiction in the first place, there is no reason to provide it with the opportunity to address either issue.  *See Stern v. Marshall*, 564 U.S. 462, 499 (2011).  Regardless, the Stay Orders give Debtors the authority to decide whether to terminate the PI/WD Procedures and their interminable stay of all litigation against non-debtor tortfeasors.  App. 673 at ¶ 44.  The Stay Orders seek to accomplish through coercion, costs, threats of sanctions, and interminable delay what the Supreme Court and the Fifth Circuit forbid:  a nonconsensual release.

## REASONS THE WRIT SHOULD ISSUE

Under the All Writs Act, this Circuit has authority to issue writs of mandamus. 28 U.S.C. § 1651(a); *see Cheney v. U.S. Dist. Ct. for D.C.*, 542 U.S. 367, 380 (2004). A Circuit Court's jurisdiction permits the Circuit to "issue writs of mandamus directly to bankruptcy courts because they are courts within" the Circuit's appellate jurisdiction.  *In re Kirkland*, 75 F.4th 1030, 1040 (9th Cir. 2023).

In determining whether issuance of a writ of mandamus is appropriate, the Fifth Circuit considers several factors:  (1) the petitioner must satisfy the burden of showing that his or her right to issuance of the writ is clear and indisputable; (2) the

13

lower court's order is clearly erroneous as a matter of law, or manifests a persistent disregard of the federal rules; (3) the petitioner will be damaged or prejudiced in a way not correctable on appeal; (4) the party seeking the writ has no other adequate means to attain the relief he or she desires; and (5) the lower court's order raises problems or issues that have importance beyond the immediate case.  *See In re Clarke*, 94 F.4th 502, 516 (5th Cir. 2024); *Defense Distributed v. Bruck*, 30 F.4th 414, 427 (5th Cir. 2022).

"These hurdles … are not insuperable." *Cheney*, 542 U.S. at 381.  "[C]ommon law writs, like equitable remedies, may be granted or withheld in the sound discretion of the Court."  *See Ex parte Republic of Peru*, 318 U.S. 578, 583 (1943).

I.     **PETITIONERS HAVE A CLEAR RIGHT OF ACCESS TO THE JUSTICE SYSTEM**

Petitioners have a clear right of access to the civil justice system to seek compensation from non-debtor tortfeasors.  The Stay Orders have and will continue to cause Petitioners to suffer damages and prejudice that cannot be corrected absent the issuance of a Writ of Mandamus.

Fundamental rights are protected in bankruptcy.  *See Hanover Nat'l Bank v. Moyses*, 186 U.S. 181, 192 (1902).  The "right to sue" in court is a fundamental right. *See Chamber v. Baltimore & O.R. Co.*, 207 U.S. 142, 148 (1907).  "It is one of the highest and most essential privileges of citizenship," particularly when the lawsuit involves wrongful death.  *Id*.

A cause of action—*i.e.*, the "right to redress" or a claim for compensation—
is action taken in respect of the right to sue. *Logan v. Zimmerman Brush Co.*, 455
U.S. 422, 431 (1982). To protect the right to redress, every citizen of the United
States is entitled to "free access" to its judicial tribunals in every State of the Union.
*Slaughter-House Cases*, 83 U.S. 36, 79 (1873); *see Crandall v. Nevada*, 73 U.S. 35,
48 (1867). As the Supreme Court recognized in *Marbury v. Madison*, no right has
meaning if it cannot be judicially enforced. 5 U.S. 137, 163 (1803).

The United States has a "deeply-rooted historic tradition that everyone should
have his [or her] own day in court.'" *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 846
(1999) (quoting *Martin v. Wilks*, 490 U.S. 755, 762 (1989)).

Consistent with this tradition, a cause of action is a property right protected
by the Fifth Amendment. *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 807, 813
(1985) (a "chose in action is a constitutionally recognized property interest
possessed by each of the plaintiffs").

Further, the right to seek damages on account of a personal injury carries with
it the Seventh Amendment's guarantee of a jury trial. *See Granfinanciera, S.A. v.
Nordberg*, 492 U.S. 33, 55 (1989). Under 28 U.S.C. § 1411 Congress has preserved
the right to a jury trial: "Except as provided in subsection (b) of this section, this
chapter and title 11 do not affect any right to trial by jury that an individual has under

applicable nonbankruptcy law with regard to a personal injury or wrongful death tort claim."  28 U.S.C. § 1411(a).

A "right" that cannot be exercised is no right at all.  *See McConnell v. Federal Election Comm'n*, 540 U.S. 93, 252 (2003).  Likewise, a right to redress—*i.e.*, a cause of action for compensation—that cannot be exercised is also no right at all.

There is no Code provision that purports to deny victims access to the justice system to seek compensation from a non-debtor tortfeasor.  Core proceedings do not even include "the liquidation or estimation of contingent or unliquidated personal injury tort or wrongful death claims against the estate for purposes of distribution in a case under title 11."  28 U.S.C. § 157(b)(2)(B); *see Stern*, 564 U.S. at 499.

## A.    A Bankruptcy Court Does Not Have Authority to Discharge Claims Against Non-Debtors

The PI/WD Procedures facilitate a discharge of claims against non-debtors. But the Court lacks authority to permanently enjoin actions against non-debtors.  It follows that the Stay Orders cannot effectuate an unlawful discharge.

In *Purdue*, the Supreme Court addressed whether the Code authorizes a court to "discharge claims against a nondebtor"—*i.e.*, issue a permanent injunction enjoining tort victims from having access to the civil justice system to be heard and to seek just compensation from non-debtors without their consent—as part of a "plan of reorganization under Chapter 11."  603 U.S. at 277.

In answering this question in the negative, the Supreme Court found that for a party to credibly contend that Congress intended "to reshape traditional practice so profoundly in the present bankruptcy code" so as to authorize an Article I Court with the authority to provide the "benefits of a discharge" to a non-debtor, such party must be able to point to "somewhere in the [c]ode itself" that "expressly" provides such authority. *Id.* at 224 (quoting *Dewsnup v. Timm*, 502 U.S. 410, 420 (1992)). But the Code contains no such provision.

The Fifth Circuit has long held that any plan provision that non-consensually releases non-debtors from liability for debts and/or conduct, and any injunction that acts to shield non-debtors from such liability, must be struck from a bankruptcy confirmation plan. *See In re Pac. Lumber Co.*, 584 F.3d 229, 252 (5th Cir. 2009).

The Code offers no more authority for a court to provide the benefits of the stay in a chapter 11 proceeding to a non-debtor tortfeasor—*i.e.*, a temporary injunction—than it does for a court to provide the benefits of a discharge to a non-debtor tortfeasor—*i.e.*, permanent injunction. Nor can a court coerce tort claimants into granting non-debtor tortfeasors a release. *See Dawson v. U.S.*, 68 F.3d 886, 897 (5th Cir. 1995). But this is what the Stay Orders facilitate.

Petitioners have five options: ***first***, accept Debtors' valuation of their claims and agree to release non-debtor tortfeasors (App. 652 at ¶ 8, 672 at ¶ 42); ***second***, pay $7,500 and participate in mandatory mediation until Debtors, in their sole

discretion, decide to terminate the PI/WD Procedures, which procedures may be "incorporated into a chapter 11 plan" and remain in effect for years (App. 659-660 at ¶ 12, 669-670 at ¶¶ 35-38, 44); *third*, refuse to participate and have the Court liquidate their claims at $0 and take away their right to a jury trial (App. 675 at ¶ 50); *fourth*, waive their claims against Debtors and agree to release non-debtor tortfeasors (App. 662 at ¶ 19); or *fifth*, petition the Court to lift the gate to allow Petitioners to seek recoveries from non-debtor tortfeasors (App. 657-658 at ¶¶ 6-8).

But a Court cannot compel Petitioners to settle and release non-debtor parties. *See Dawson*, 68 F.3d at 897. Nor can the Court sanction Petitioners by forcing them to pay $7,500 if they do not acquiesce to Debtors' demand that Petitions discharge non-debtor tortfeasors. *Id.* And the Court cannot liquidate a personal injury claim and deprive claimants of their right to a jury trial as a sanction. *See* 28 U.S.C. § 157(b)(2)(B); 28 U.S.C. § 1411(a).

Nor can the Court force claimants to agree to discharge non-debtor tortfeasors of their liability as a condition to returning to the civil justice system. *Purdue*, 603 U.S. at 277. And the Court cannot exercise "gatekeeping powers over claims against non-debtors." *Highland Capital*, 132 F.4th at 353.

### B.  Section 362(a) Does Not Enjoin Actions Against Non-Debtors

Contrary to the Stay Orders, which provide that section 362(a)'s stay applies to Petitioners' "direct claims, if any, against any non-Debtor party that is a co-

defendant of a Debtor," the Fifth Circuit has repeatedly held that section 362(a)'s stay does not apply to claims against non-debtors. *Wedgeworth*, 706 F.2d at 544; *accord Edge Petroleum Operating Co. v. GPR Holdings, L.L.C. (In re TXNB Internal Case)*, 483 F.3d 292, 301 (5th Cir. 2007); *Arnold v. Garlock, Inc.*, 278 F.3d 426, 436 (5th Cir. 2001); *GATX Aircraft Corp. v. M/V Courtney Leigh*, 768 F.2d 711, 716 (5th Cir. 1985).

Section 362(a)(1) covers only two situations: "action[s] or proceeding[s] against the debtor," and "claim[s] against the debtor." 11 U.S.C. § 362(a)(1). A non-debtor tortfeasor is not a debtor. *See id.* § 101(13). On the statute's face, neither prong of section 362(a)(1) covers litigation against non-debtors.

Statutory structure confirms this point. Congress knows how to draft stay language that extends to non-debtors: it did just that in Chapters 9, 12, and 13. *Compare* 11 U.S.C. § 922(a), *id.* § 1201(a), and *id.* § 1301(a) *with id.* § 362(a)(1). Other section 362(a) subsections provide for stays without confining them to the "debtor." *E.g.*, 11 U.S.C. § 362(a)(2)-(5). If Congress intended for section 362(a)(1) to extend to non-debtors, it would have said so.

In the Fifth Circuit, "[s]ection 362(a) operates to stay only actions against bankruptcy petitioners and their property." *Edge Petroleum*, 483 F.3d at 301. "The purposes of the bankruptcy stay under 11 U.S.C. § 362 'are to protect the debtor's assets, provide temporary relief from creditors, and further equity of distribution

among the creditors by forestalling a race to the courthouse.'" *Reliant Energy*, 349 F.3d at 825. "'By its terms the automatic stay applies only to the debtor, not to co-debtors … nor to co-tortfeasors.'" *Id.* (quotation omitted).

Here, the Court found that Petitioners' "direct claims … against any non-Debtor party that is a co-defendant of a Debtor are stayed" pursuant "to section 362(a)(1)." App. 481 at ¶ 2; *see* App. 505 at ¶ 2; App. 651 at ¶ 4. The Stay Orders clearly disregard Fifth Circuit precedent.

### C. Section 105(a) Does Not Authorize a Bankruptcy Court to Enjoin Actions Against Non-Debtor Parties

Likewise, section 105(a) does not authorize a court to enjoin litigation against non-debtor tortfeasors. Any action a bankruptcy court takes under section 105(a) "must be consistent with the rest of the Bankruptcy Code." *Feld*, 62 F.3d at 760.

Court action, therefore, must square with the fact that the Code does not toll, or authorize a court to toll, the period for a non-debtor to commence an action against a non-debtor. 11 U.S.C. § 108(c). And Court action must square with the Code's edict that the "discharge of a debt of the debtor does not affect the liability of any other entity on ... such debt." 11 U.S.C. § 524(e). As this Court held in *Pacific Lumber*, "[t]he fresh start § 524(e) provides to debtors is not intended to serve th[e additional] purpose" of releasing non-debtors. 584 F.3d at 252–53.

A court that approves a nonconsensual release and/or injunction protecting non-debtors "exceed[s] its powers under § 105." *Highland Capital*, 132 F.4th at

359.  Likewise, the Court exceeded its powers by enjoining litigation against non-debtors that are not entitled to a discharge and by ordering procedures that condition settlements on Petitioners granting non-debtors releases.

### D.      A Bankruptcy Court Cannot Function as a "Gatekeeper"

A bankruptcy court cannot function as a gatekeeper.  In *In re Highland Capital Management, L.P.*, the debtor proposed a plan that included a gatekeeper injunction. No. 19-34054-SGJ (Bankr. N.D. Tex. Jan.22, 2021) (Dkt. 1808 at Art. IX.F).  This injunction barred claimants from commencing actions against non-debtors without first obtaining permission from the bankruptcy court.  *Id.*

The Bankruptcy Court—indeed, the ***same*** Court that is the subject of this Petition—found that this gatekeeper provision was "critical to the effective and efficient administration, implementation, and consummation of the Plan" and that the court had the "statutory authority" to approve such provision under sections 1123(a)(5), 1123(b)(6), 1141, 1142(b), and 105(a).  *Id.* at Dkt. 1943 at ¶¶ 76 & 80.

The Fifth Circuit reversed and held that the Court does not have authority to enjoin "claims against non-debtors" that are not entitled to be released or discharged. *Highland Capital*, 132 F.4th at 359.  The Fifth Circuit held that such authority "is patently beyond the power of an Article I court under § 105."  *Id.* at 362.

If a bankruptcy court lacks statutory authority to issue a gatekeeper injunction as part of a chapter 11 plan, then a bankruptcy court also lacks statutory authority to issue a gatekeeper injunction (or its equivalent) *during* a chapter 11 case.

There is no more "statutory authority" for a court to enjoin claims against non-debtors—or create obstacles that prevent claimants from exercising their right to seek compensation from non-debtors—than there is for a court to "exculpate non-debtors." *Matter of Highland Cap. Mgmt., L.P.*, 48 F.4th 419, 438 (5th Cir. 2022).

The Stay Orders mirror the gatekeeper clause in the *Highland Capital* plan. *Compare* 132 F.4th at 356 (gatekeeper clause enjoined "commence[ment]" or "pursu[it]" of claims against non-debtors that "arise[] from or [are] related to the Chapter 11 Case … or the wind down of the business of the Debtor" absent prior Court approval); *with* App. 657-658 at ¶¶ 6, 9 (enjoining "commence[ment] or continua[tion]" of claims against non-debtor "Co-Defendants" "to the extent they arise from or are related to the Debtors' operations" absent prior Court approval).

But the Court does not have "gatekeeping power over claims against non-debtors." *Highland Capital*, 132 F.4th at 359. "Such authority is patently beyond the power of an Article I Court under § 105." *Id.* at 362.

## E. Preliminary Injunction Requirements Were Not Satisfied

Debtors' position before the Court was that the Fifth Circuit recognizes the *A.H. Robins* exception, and that the Court could extend the stay to non-debtor tortfeasors. App. 128. This argument fails for at least four reasons.

**First**, although sometimes called an "extension" of the stay, when a court enjoins actions that are not subject to the stay, it is issuing injunctive relief under section 105(a).[5] The "court in [*Robins*] applied the test for a grant of preliminary injunctive relief." *A.H. Robins Co. v. Piccinin*, 788 F.3d 994, 1008 (4th Cir. 1986).

Recognizing an atextual exception to section 362(a) today would be difficult to justify in light of recent Supreme Court rulings counseling against judicially created exceptions to Code language that go beyond the Code's stated terms. *See*, *e.g.*, *Bartenwerfer v. Buckley*, 598 U.S. 69, 74-78 (2023) ("exceptions [to Code language] should not extend beyond their stated terms.") (quoting *Van Buren v. United States*, 593 U.S. 374, 381 (2021) & *Badgerow v. Walters*, 596 U. S. 1, 11 (2022)); *City of Chicago v. Fulton*, 592 U.S. 154, 160 (2021); *Czyzewski v. Jevic Holding Corp.*, 580 U.S. 451, 471 (2017). Recognizing an exception to section 362(a) for claims against non-debtors would offend these rulings.

---

[5] *See In re Excel Innovations, Inc.*, 502 F.3d 1086, 1096 (9th Cir. 2007) ("stays under the [*Robins*] doctrine, 'although referred to as extensions of the automatic stay, were in fact injunctions issued by the bankruptcy court'"); *C.H. Robinson Co. v. Paris & Sons, Inc.*, 180 F. Supp. 2d 1002, 1011 (N.D. Iowa 2011); *In re Bora Bora, Inc.*, 424 B.R. 17, 25 (Bankr. D. Puerto Rico 2010).

**Second**, Debtors failed to commence an adversary proceeding, which is a prerequisite to the issuance of a preliminary injunction under *Zale*, 62 F.3d at 762-63, 766. Thus, the Bankruptcy Court clearly erred by granting injunctive relief.

**Third**, had Debtors commenced an adversary proceeding, the record below would not support the issuance of a preliminary injunction.

A preliminary injunction can only be granted upon a finding of, *inter alia*, "unusual circumstances" that are "rare[]," and not the norm. *Reliant Energy*, 349 F.3d at 825; *see In re Divine Ripe, LLC*, 538 B.R. 300, 313 (Bankr. S.D. Tex. 2015). Debtors offered a litany of arguments to support their position: interwoven claims, burden on key personnel, alleged contractual indemnities, and shared insurance. App. 127-138. But none of these things constitute "unusual circumstances."[6]

**Interwoven Facts**. Debtors asserted that a stay extension is appropriate because the claims against Debtors and non-debtor defendants are "inextricably interwoven." App. 131-132 at ¶¶ 43-46. But this is not ***unusual***.

This is true in nearly every co-defendant situation, which is why "the presence of identical allegations against the debtor and nondebtor defendants are an insufficient ground to extend the stay to the nondebtors."[7]

---

[6] *Reliant Energy*, 349 F.3d at 825; s*ee In re Fernstrom Storage & Van Co.*, 938 F.2d 731, 736 (7th Cir. 1991).

[7] *Beran v. World Telemetry, Inc.*, 747 F. Supp. 2d 719, 724 (S.D. Tex. 2010); *see Divine Ripe*, 538 B.R. at 312.

**Burden on Personnel**.  Debtors argued that continued litigation of the lawsuits against the non-debtor defendants could burden key personnel during the sale process.  App. 133 at ¶¶ 47-48.  But none of Debtors' professionals responsible for the sale are parties to pending lawsuits.  The sale is expected to take place in the near term.  App. 48-52 at ¶¶ 102-115.  Further, even if such professionals were defendants, this would not be *unusual*.  *See In re Parlement Techs., Inc.*, 661 B.R. 722, 730 (Bankr. D. Del. 2024).

**Indemnification**.  Debtors raised alleged indemnification obligations as a basis to extend the stay.  App. 129-131 at ¶¶ 38-42.  But this is also not *unusual*.  *Parlement*, 661 B.R. at 729.  Further, Debtors ignored the fact that a claim for indemnification or contribution by a co-defendant is subject to the automatic stay.

A party that has a claim for indemnification, contribution, or reimbursement against a debtor holds just that:  a claim against a debtor.

Claims for reimbursement or contribution from Debtors' estates are prepetition unsecured claims subject to disallowance under section 502(e) and subordination under section 509(c).  *See* 11 U.S.C. §§ 502(e) & 509(c).  Holders of such claims stand to recover nothing in Debtors' cases on account of their claims.  An unsecured claim cannot be converted into an administrative claim by *ipse dixit*.

Therefore, allowing a lawsuit to be filed against a party that is entitled to indemnification—as a matter of basic math—does not impact Debtors' estates.

For example, if a tort claimant is owed $1 million for an injury, and a co-liable indemnitee pays the tort claimant $1 million (thereby satisfying the claim in full), then Debtors would cease to owe the tort claimant $1 million but would owe the indemnitee $1 million. Debtors' total liability would be unchanged.

Permitting litigation to go forward against a co-liable tortfeasor that is entitled to reimbursement from Debtors may *substitute* one claimant for another. But there is no reason why a co-liable tortfeasor (that caused an injury) should be preferred over a tort victim (who was injured). A court should not elevate a co-liable party's interest in evading accountability for an injury it caused over a tort claimant's interest in obtaining just compensation for an injury.

**Shared Insurance**. Debtors raised the specter of shared insurance. App. 134-136 at ¶¶ 49-52. Debtors allegedly purchased insurance, which is not ***unusual***.

The Debtors' insurance may provide coverage for tort claims. If Debtors are found liable, Debtors may have the right to seek indemnification from an insurer. Debtor polices may provide coverage to additional insureds.

And these insureds may be non-debtors that Petitioners can sue. But, as Debtors conceded: "The "Fifth Circuit has long held that '[i]nsurance policies are property of the estate because, regardless of who the insured is, the debtor retains certain contract rights under the policy itself. Any rights the debtor has against the insurer, whether contractual or otherwise, become property of the estate.' *In re*

*Ozcelebi*, 639 B.R. 365, 398 (Bankr. S.D. Tex. 2022) (quoting *Houston v. Edgeworth (In re Edgeworth)*, 993 F.2d 51, 55 (5th Cir. 1993)).” App. 134 at ¶ 50.

This is why Debtors' argument was nonsensical. Acts to obtain possession of, or to exercise control over, estate property are stayed. 11 U.S.C. § 362(a)(3).

Here, Petitioners can assert claims against Debtors and non-debtors. The claims against Debtors are stayed. 11 U.S.C. § 362(a)(1). If a non-debtor were to seek coverage from one of Debtors' policies, that defendant would need to first seek stay relief because such “[i]nsurance policies are property of the estate.” *Ozcelebi*, 639 B.R. at 398. Such relief would likely be denied if the coverage provided under the policy could be exhausted. But the possibility that a non-debtor tortfeasor could be denied access to shared insurance is not a basis to deny tort victims access to the civil justice system to pursue direct claims against such non-debtor parties.

**Fourth**, Debtors did not attempt to satisfy the standard for a preliminary injunction. App. 136-138 at ¶¶ 53-56. This is remarkable given that the authority Debtors cited—namely, *A.H. Robins*—applied this very standard. 788 F.2d at 1008.

Debtors cannot end-run the factors courts are required to consider before issuing an injunction under section 105(a) by invoking section 362(a) when section 362(a)'s clear language limits the stay to suits against the debtor. *Matter of Commonwealth Oil Ref. Co.*, 805 F.2d 1175, 1188-89 (5th Cir. 1986) (“stays under

[§ 105] are granted only 'under the usual rules for the issuance of [a preliminary injunction.'") (quotation omitted).

Assuming that section 105(a) is available to enjoin actions that are not covered by section 362(a), the party seeking such relief must satisfy the four-part test for a preliminary injunction: (1) likelihood that the movant will prevail on the merits; (2) irreparable injury; (3) equities favoring the movant; and (4) a showing that the injunction serves the public interest. *Id.*

"A preliminary injunction 'is an extraordinary and drastic remedy, not to be granted routinely, but only when the movant, by a clear showing, carries a burden of persuasion.'" *Black Fire Fighters Ass'n of Dallas v. City of Dallas, Texas*, 905 F.2d 63, 65 (5th Cir. 1990). Debtors did not try to carry this burden. App. 136-138 at ¶¶ 53-56. Thus, the *Robins* court would find that the Bankruptcy Court's ruling was clearly erroneous.

**First**, Debtors did not show that they are likely to succeed on the merits. *Purdue's* prohibition against granting releases in favor of non-debtors means that Debtors will not be able to obtain a permanent injunction.

**Second**, Debtors failed to show an irreparable injury. Co-defendant claims against Debtors are stayed under section 362(a)(1). And co-defendant claims to any shared insurance are stayed under section 362(a)(3). A showing of an "irreparable

injury" cannot be predicated on an allegation that stay relief might be granted "for cause" under section 362(d).

**Third**, the harm that Petitioners now face because of the Stay Orders was not considered. Petitioners could be denied access to the justice system for years.

During this time, statutes of limitations may run, Petitioners will be denied discovery, key evidence could be lost or tainted, and Petitioners will not be compensated. If Petitioners somehow escape, they could be required to establish grounds for equitable tolling before commencing lawsuits.

**Fourth**, trapping holders of personal injury claims in bankruptcy indefinitely and subjecting them to fines and sanctions if they refuse to grant non-debtors a release is inconsistent with the public interest.

The right to sue in court is a fundamental right. It is one of the most essential privileges of citizenship. Silencing victims could never be in the public interest. Debtors' scheme targets the elderly and rewards parties that failed to care for them.

## II. THE CLAIMANTS HAVE NO OTHER ADEQUATE MEANS TO ATTAIN RELIEF FROM THE STAY ORDERS

Petitioners here have no other adequate means to attain relief. Debtors may attempt to moot appeals of the Stay Orders as well as any discharge afforded to non-debtors in the chapter 11 cases. *See In re Boy Scouts of America*, 137 F.4th 126, 170-177 (3d Cir. 2025) (Rendell, J., concurring).

Debtors are likely to take the position that the Stay Orders are interlocutory because the Court's injunction is not, on its face, permanent. *See*, *e.g.*, *In re Mallinckrodt plc*, No. 20-408, 2021 WL 523625, at *5 (D. Del. Feb. 11, 2021).

Stay extension orders often evade appellate review because they have been treated as interlocutory. Petitioners may be unable to obtain access to the Fifth Circuit through the appellate process for years while they are forced to reckon with the PI/WD Procedures. Petitioners must collectively pay $210,000 just to avoid being forced to grant releases in favor of non-debtors. Further, if the statute of limitation runs, non-debtor tortfeasors may receive a *de facto* discharge.

But the key to understanding why the normal appellate process will not afford, and has not afforded, effective relief to tort victims handcuffed by improper stay extensions lies in viewing this case in its historical context and why this case presents a matter of public importance.

## III.  ISSUES HAVE IMPORTANCE BEYOND THE IMMEDIATE CASE

Bankruptcy was never intended to replace the civil justice system. Yet, debtors in cases beyond this one have sought to replace the civil justice system with bankruptcy. Fundamental to these strategies is the use of section 362(a)'s automatic stay and section 105(a) injunctions to deny tort victims access to the justice system to assert claims against non-debtors that are not entitled to a discharge.

The so-called "Texas Two Step" cases illustrate this point.[8]  In each of these cases, solvent tortfeasors underwent a divisional merger under Texas law that assigned their operating assets to one entity and their tort liability to another entity and then placed the entity with the tort liability into bankruptcy.

These two steps are not *per se* an insurmountable obstacle for tort claimants. As case law has shown, claimants can add the entity assigned the operating assets as a defendant by invoking the state law doctrine of successor liability.[9]

To halt all litigation, the debtor must obtain an injunction that prevents tort claimants from continuing litigation against non-debtor affiliates.  In each of the foregoing Two-Step cases, the bankruptcy courts obliged this request and issued injunctions that enjoin litigation against the non-debtor affiliates.

The outcome is tragic.  Non-debtors that are ineligible for a discharge operate freely outside of bankruptcy and do not have to pay judgments or settlements or incur defense costs.  Tort claimants are trapped in bankruptcy indefinitely.  Non-debtors secure the equivalent of a discharge through the passage of time.

---

[8]  *See In re DBMP, LLC*, No. 20-30080 (Bank. W.D.N.C.); *In re Aldrich Pump LLC*, No. 20-30608 (Bankr. W.D.N.C); *In re Murray Boiler LLC*, No. 20-30609 (Bankr. W.D.N.C.); *In re Bestwall, LLC*, No. 17-31795 (Bankr. W.D.N.C.).

[9]  *See Kelly v. Corizon Health Inc*., No. 2:22-cv-10589, 2022 WL 16575763 (E.D. Mich. Nov. 1, 2022); *Jackson v. Corizon Health Inc*., No. 2:19-cv-13382, 2022 WL 16575691 (E.D. Mich. Nov. 1, 2022).

Indeed, the tort claimants in *Bestwall* have now been trapped in bankruptcy for over seven years. *See Bestwall LLC v. Official Committee of Asbestos Claimants of Bestwall, LLC*, 148 F.4th 233, 249 (4th Cir. 2025) (King, J., dissenting).

During this time, "[a]pproximately 10,000 [c]laimants have died" and "others have seen their families saddled with medical debt." *Id.* Due to the court's stay extension, "not one of about 56,000 plaintiffs has been able to pursue his or her claims" against non-debtor parties in the civil justice system. *Id.*

Meanwhile, these non-debtors "have enjoyed the protections of bankruptcy alongside substantial and stable profits," all without subjecting themselves to the burdens of bankruptcy. *Id.* Left unchecked, bankruptcy becomes a tool to inflict violent and lethal delay, as many tort victims die due to their injuries while they are denied access to the civil justice system by an Article I court.

These cases have prompted Senators to propose bi-partisan legislation to put an end to this abuse. On July 23, 2024, the "Ending Corporate Bankruptcy Abuse Act" ("**ECBA**") was proposed. If enacted, the ECBA would, *inter alia*, make it clear that a bankruptcy court cannot block litigation against non-debtor affiliates.

But such legislation would not be necessary if courts like the Fifth Circuit properly restrained the exercise of bankruptcy courts' equitable powers under section 105(a), as the Fifth Circuit did in *Highland Capital*.

The Fifth Circuit has held for decades that section 362(a) "does not operate as an automatic stay of claims against the co-defendants." *Wedgeworth*, 706 F.2d at 544. This should be the beginning and end of the analysis.

But even putting this aside, there is no practical difference between an order confirming a plan that discharges claims against a non-debtor—*i.e.*, a ***permanent*** injunction enjoining tort victims from having access to the justice system to seek just compensation from non-debtors without their consent—and an order extending the stay for years and years—*i.e.*, a so-called "***temporary*** injunction."

Debtors will "win" if they defeat this Petition and reap the benefits provided to them by the Stay Orders. Further, if left unchecked, these cases provide a roadmap for nursing home operators to fail to provide adequate care knowing that they can seek refuge in bankruptcy and wash away their liabilities for the harms suffered at their hands. The Stay Orders, if permitted to remain in effect as to Petitioners, endanger the care of nursing home residents nationwide.

One of Petitioners here died in a Genesis nursing home in Clovis, New Mexico due to negligent care. Her joints were frozen and contracted into a fetal position. She was frequently left in bed soaking in her urine. She suffered weight loss, dehydration, falls, significant pain, mental anguish, and violations of her dignity. New Mexico law and the Constitution affords her estate the right to seek just compensation from non-debtor tortfeasors that caused her untimely death.

The Bankruptcy Court took away her ability to appear, to be heard, and to seek just compensation in the civil justice system. Petitioners petition this Court to restore their fundamental rights without further delay.

## **CONCLUSION**

This Petition should be granted.

Dated:     November 17, 2025

**STUTZMAN, BROMBERG, ESSERMAN & PLIFKA, PC**

/s/ Sander L. Esserman
Sander L. Esserman
State Bar No. 06671500
Peter C. D'Apice
2323 Bryan Street, Ste. 2200
Dallas, Texas 75201-2689
Telephone: (214) 969-4900
Facsimile: (214) 969-4999
Email: esserman@sbep-law.com
        dapice@sbep-law.com

**BROWN RUDNICK LLP**
David J. Molton
Eric R. Goodman
Gerard T. Cicero
Seven Times Square
New York, New York 10036
Telephone: (212) 209-4800
Facsimile: (212) 209-4801
Email: dmolton@brownrudnik.com
        egoodman@brownrudnik.com
        gcicero@brownrudnik.com

**MARKS, BALETTE, YOUNG & MOSS PLLC**
Jacques G. Balette
7521 Westview Dr.
Houston, Texas 77055
Telephone: (713) 681-4830
Facsimile: (713) 681-2811
Email:      jacquesb@marksfirm.com

*Counsel for Petitioners*

## CERTIFICATE OF COMPLIANCE

**Certification of Bar Membership**

I hereby certify that I, Peter C. D'Apice, am a member in good standing of the bar of the United States Court of Appeals for the Fifth Circuit.

**Certification of Identity of Petitioners**

I hereby certify that the following are the Petitioners who are filing this *Petition for Writ of Mandamus*:

Estate of Alma Brown
Estate of Andrea Dominquez
Estate of Don Arrington
Estate of Eloy Medina
Estate of Emden Syres
Estate of Eshter Monje
Estate of Faustina Tinkham
Estate of Gloria Quintana
Estate of James Chavis
Estate of Jane Handley
Estate of Janet Copsy
Estate of Jerry Jones
Estate of Johnny Chewiwi
Estate of Laura Dinkins
Estate of Linda Medlock
Estate of Lorna Charles
Estate of Manuel Salaiz
Estate of Paul Baca
Estate of Ruben Montoya
Estate of Shearron Mitchell
Estate of Stella Lucero
Estate of Nicy Austin
Adam Gomez
Sheila Leakey-O'Brien
Georgia Romero
Vikki Romo

Yvonne Tellez-Ramirez
Dina Pacheco

**Certification of Compliance with Type-Volume Limitation**

This *Petition for Writ of Mandamus* complies with the type-volume limitation of Fed. R. App. P. 21(d)(1) because, excluding the parts of the brief exempted by Fed. R. App. P. 21(a)(2)(C), it contains 7,776 words.

**Certification of Compliance with Typeface and Type Style Requirements**

This *Petition for Writ of Mandamus* complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionately spaced typeface using Microsoft Word for Microsoft 365 with 14-point Times New Roman font.

**Certification of AI Usage Reporting Requirements**

This *Petition for Writ of Mandamus* complies with the AI usage reporting requirement of 5th Cir. R. 32.3 because no generative artificial intelligence program was used in the drafting of this *Petition for Writ of Mandamus*.

**Certification of Appendix (Orders and Record)**

In accordance with Fed. R. App. P. 21(a)(2)(C) and 5th Cir. R. 21, this *Petition for Writ of Mandamus* is being filed with an appendix that includes the orders and parts of the record that may be essential to understand the matters set forth herein, including applications to the court for relief, memoranda or briefs filed in opposition, and relevant portions of hearing transcripts.

**Certification of Filing, Service, and Docketing**

In accordance with Fed. R. App. P. 21(a)(1), on November 17, 2025, I caused

a true and correct copy of this *Petition for Writ of Mandamus* to be served via email

on the interested persons and the Debtors' counsel listed below.

> **McDermott Will & Schulte LLP**
> Daniel M. Simon
> William A. Guerrieri
> Catherine Lee
> Landon Foody
> 444 West Lake Street
> Suite 4000
> Chicago, Illinois 60606
> Telephone:   (312) 372-2000
> Facsimile:   (312) 984-7700
> Email:         dsimon@mwe.com
>                    wguerrieri@mwe.com
>                    clee@mwe.com
>                    lfoody@mwe.com
>
> **McDermott Will & Schulte LLP**
> Marcus A. Helt
> Jack G. Haake
> Grayson Williams
> 2801 N. Harwood Street, Suite 2600
> Dallas, Texas  75201-1574
> Telephone:   (214) 295-8000
> Facsimile:   (972) 232-3098
> Email:         mhelt@mwe.com
>                    jhaake@mwe.com
>                    gwilliams@mwe.com
>
> *Counsel for the Debtors and Debtors in Possession*

I further certify that on November 17, 2025, I caused a true and correct copy

of this *Petition for Writ of Mandamus* to be (i) filed on the docket of the Debtors'

chapter 11 cases and served via ECF on parties in that proceeding and (ii) delivered

to the United States Bankruptcy Judge Stacey G. Jernigan in accordance with Fed.

R. App. P. 21(a)(1).

**Certification of Interested Persons**

I hereby certify that the following may be interested persons as described in

5th Cir. R. 28.2.1:

| Interested Party | Counsel |
|---|---|
| White Oak Healthcare Finance, LLC | **Blank Rome LLP**<br>Joseph M. Welch<br>200 Crescent Court, Suite 1000<br>Dallas, Texas  75201<br>Telephone:    (972) 850-1450<br>Email:  joseph.welch@blankrome.com<br><br>**Blank Rome LLP**<br>Kenneth J. Ottaviano<br>Paige B. Tinkham<br>444 West Lake Street, Suite 1650<br>Chicago, Illinois  60606<br>Telephone:    (312) 776-2514<br>Email:  ken.ottaviano@blankrome.com<br>            paige.tinkham@blankrome.com<br><br>**Blank Rome LLP**<br>Jordan L. Williams<br>1201 N. Market Street, Suite 800<br>Wilmington, Delaware  19801<br>Telephone:    (302) 425-6424<br>Email:<br>Jordan.williams@blankrome.com |

| Interested Party | Counsel |
|---|---|
| Welltower OP LLC | **Gibson Dunn & Crutcher LLP**<br>John T. Cox<br>2001 Ross Avenue, Ste. 2100<br>Dallas, Texas  75201-2923<br>Telephone:     (214) 698-3100<br>Facsimile:      (214) 571-2900<br>Email:  tcox@gibsondunn.com<br><br>**Gibson Dunn & Crutcher LLP**<br>Jeffrey C. Krause<br>Michael G. Farag<br>333 South Grand Avenue<br>Los Angeles, CA  90071-3197<br>Telephone:     (213) 229-7000<br>Facsimile:      (213) 229-7520<br>Email:  jkrause@gibsondunn.com<br>             mfarag@gibsondunn.com |
| WAX Dynasty Partners, LLC | **DLA Piper LLP (US)**<br>James P. Muenker<br>1900 North Pearl Street, Suite 2200<br>Dallas, Texas  75201<br>Telephone:     (214) 743-4500<br>Facsimile:      (214) 743-4545<br>Email:<br>james.muenker@us.dlapiper.com<br><br>**DLA Piper LLP (US)**<br>Rachel Nanes<br>200 South Biscayne Boulevard, Suite 2500<br>Miami, Florida  33131<br>Telephone:     (305) 423-8500<br>Facsimile:      (305) 437-8131<br>Email:  rachel.nanes@us.dlapiper.com |
| CPE 88988 LLC | **DLA Piper LLP (US)**<br>James P. Muenker |

| Interested Party | Counsel |
|---|---|
| | 1900 North Pearl Street, Suite 2200<br>Dallas, Texas 75201<br>Telephone: (214) 743-4500<br>Facsimile: (214) 743-4545<br>Email:<br>james.muenker@us.dlapiper.com<br><br>**DLA Piper LLP (US)**<br>Rachel Nanes<br>200 South Biscayne Boulevard, Suite 2500<br>Miami, Florida 33131<br>Telephone: (305) 423-8500<br>Facsimile: (305) 437-8131<br>Email: rachel.nanes@us.dlapiper.com |
| ReGen Healthcare LLC | **DLA Piper LLP (US)**<br>James P. Muenker<br>1900 North Pearl Street, Suite 2200<br>Dallas, Texas 75201<br>Telephone: (214) 743-4500<br>Facsimile: (214) 743-4545<br>Email:<br>james.muenker@us.dlapiper.com<br><br>**DLA Piper LLP (US)**<br>Rachel Nanes<br>200 South Biscayne Boulevard, Suite 2500<br>Miami, Florida 33131<br>Telephone: (305) 423-8500<br>Facsimile: (305) 437-8131<br>Email: rachel.nanes@us.dlapiper.com |

*/s/ Peter C. D'Apice*
Peter C. D'Apice